NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERICA,
LOCAL 745, AFL–CIO, Respondent.

No. 25752.

United States Court of Appeals,
Ninth Circuit.

Nov. 1, 1971.

**1256**

Frank H. Itkin (argued), Lynn D. Poole, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Benjamin C. Sigal (argued), of Shim, Sigal & Ono, and Moore, Torkildson & Schulze, Honolulu, Hawaii, for respondent.

Before KOELSCH and KILKENNY, Circuit Judges, and MURRAY, District Judge.*

WILLIAM D. MURRAY, District Judge:

This case is before the court upon the application of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.) for enforcement of its order against the Union to cease and desist from picketing the Company's project for an organizational or recognitional object, and to post appropriate notices.

The Board found that in 1968 the Union, which was not the certified representative of the company's employees, picketed the Company's Lunalilo project site for more than 30 days with an organizational or recognitional object and without the filing of an election petition under Section 9(c) of the Act, and thus violating Section 8(b) (7) (C) of the Act.

The function of this court is to determine whether the Board's findings are supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Respondent Union contends there is not substantial evidence in support of the Board's findings. In particular, the Union protests that evidence of an event which occurred some eight years before the hearing, when the Union requested the Company to bargain with it for the latter's carpenters, should not have been considered in determining the motive or objective of the Union. No further communication between the parties then occurred and the matter was dropped. This event is rather remote to be accorded much weight in determining the Union's object or motive in picketing in 1968. It is well outside the Section 10(b) six-month period [1] and therefore cannot be the grounds of violation of Section 8(b) (7) (C). But it is clear that the Examiner limited this evidence to whatever effect it might have in throwing light on the specific conduct within the period in issue. Local Lodge 1424 IAM v. N.L.R.B., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) at note 11; N.L.R.B. v. MacMillan Ring-Free Oil Co., Inc., 394 F.2d 26 (9th Cir.1968). Section 10(b) is characterized as a statute of limitations, not a rule of evidence.

The Union makes the same objection to evidence of an event which occurred about a year prior to the cut-off date here, when the Honolulu Building & Construction Trades Council (of which the Union was a member) picketed the Company in protest of substandard wages, hours and conditions of employment. The Company filed an unfair labor charge and prior to the issuance of any complaint the Company and the

---

* Honorable W. D. Murray, Senior United States District Judge for the District of Montana, sitting by designation.

1. Section 10(b) of the Act (29 U.S.C.A. Sec. 160(b)) provides in part: " * * * That no complaint shall issue upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board * * * " The charge was filed on September 16, 1968. The statutory period therefore goes back to March 16, 1968.

Council agreed among other things to post the following notice:

"Notice

"WE WILL NOT picket JAMES W. GLOVER, LTD. (herein called GLOVER) or cause GLOVER to be picketed where an object thereof is to force or require GLOVER to recognize or bargain with BUILDING AND CONSTRUCTION TRADES COUNCIL OF HONOLULU, as representative of any employees of GLOVER or to force or require any employees of GLOVER to accept or select said BUILDING AND CONSTRUCTION TRADES COUNCIL OF HONOLULU as the collective bargaining representative in violation of Section 8(b) (7) subparagraph (C) of the Act."

The agreement also provided:

"The signing of this Settlement Agreement does not constitute admission of unfair labor practice."

The picketing ceased upon the execution of the agreement.

The Union objects to the reception of this evidence on the ground that the Union was not associated with this event and thus it should not be considered as throwing light on the purpose or motive of the Union in 1968.

The simple answer to this objection is that the evidence showed and the Examiner found that the Union had delegates on the governing board of the Council and that the main duties of the Council "consist of giving advice and assistance to its affiliates on their disputes with the employers engaged in the Honolulu building and construction industry, picketing a particular employer or a group of employers with whom an affiliate has a labor dispute; and otherwise assist its affiliated locals on all other labor matters or disputes". (Transcript note 7, page 16).

The evidence also shows that the Council, in its letters directed to the Company on June 2, 1967, asserted that it was acting in behalf of the local unions in the building and construction industry in Hawaii.

■ The evidence of the 1960 request for recognition and the 1967 letters and picketing do not in or of themselves amount to a violation of Section 8(b) (7) (C). They are beyond the statutory period set out by Section 10(b). However, the events do demonstrate, as the Examiner found, and the Board agreed, that the Union had a continuing interest prior to 1968 in representing the Company's employees. For that limited purpose they were properly considered. Local Lodge 1424 IAM, supra.

The Examiner and the Board did not purport to rest their decision upon the pre-1968 factors which came out of the hearing, but instead grounded their finding of a violation of Section 8(b) (7) (C) on facts arising out of 1968 picketing of the Company by the local Union.

The Examiner found and the Board concurred that the Union had no real interest in the alleged sub-standard working conditions of the Company, that the purpose of the picketing was organizational and recognitional, and further, that the Union was not protected by the "informational picketing" proviso of Section 8(b) (7) (C).

■ From an examination of the record as a whole, it is clear that there is substantial evidence in support of the Board's Conclusion and Order. The finding that the Union was not interested in the alleged sub-standard working conditions at the job-site is supported by substantial evidence relied upon by the Examiner to the effect that there was failure to really investigate the Company's working standards. Centralia Building & Construction Trades Council v. N.L.R.B., 124 U.S.App.D.C. 212, 363 F.2d 699, 701 (1966).

This is a reasonable finding even considering all the evidence in opposition to it. Further, virtually all of the area-standard charges asserted by the Union were shown to be untrue or inaccurate.

In support of the conclusion that the purpose of the picketing was organizational and recognitional, the Board found, on the basis of the admissions of the Union's financial secretary, that the Company would have had to meet every term and condition in the Union's collective-bargaining agreements with other employers, including the recognition and union security clauses, before the Union would be satisfied that Glover was meeting area standards. Centralia Building & Construction Trades Council v. N.L. R.B., supra; N.L.R.B. v. Retail Clerks Int'l Ass'n, Local Union No. 899, 166 NLRB 818, 823–824 (1967), enf'd, 404 F.2d 855 (C.A. 9 1968).

The respondent Union further argues that its picketing was protected by the "informational picketing" proviso of Section 8(b) (7) (C),[2] citing Smitley v. N.L.R.B., 327 F.2d 351 (9th Cir. 1964).

██ Under the findings of the Board and the cases cited, it is clear that the proviso does not apply to this case. Implicit in the findings is that the signs protesting sub-standard conditions did not truthfully state the purpose of the picketing.

And it is to be further noted that the language of the signs protested only sub-standard wages and working conditions. The signs said nothing which advised the public that the Company "did not employ members of or have a contract with" the Union. In making its findings the Board need not ascribe to the signs words other than those of the signs themselves. N.L.R.B. v. Carpenters Local 2133, 356 F.2d 464, 465, 466 (C.A.9 1966). It is therefore immaterial that the picketing did not result in any Company work stoppage or cessation of deliveries.

The Board's findings are shown to be supported by substantial evidence and nothing in the evidence dictates that the Union's action is within the proviso of Section 8(b) (7) (C). Therefore, the Board's order against the Union to cease and desist from picketing the Company's project for an organizational and recognitional object and to post appropriate notices will be enforced.

---

2. The pertinent part of the proviso reads:
    "Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."